Aaron M. Sheanin (SBN 214472)
asheanin@robinskaplan.com
Christine S. Yun Sauer (SBN 314307)
cyunsauer@robinskaplan.com
**ROBINS KAPLAN LLP**
46 Shattuck Square, Suite 22
Berkeley, CA 94704
Telephone: (650) 784-4040
Facsimile: (650) 784-4041

[Additional counsel on signature page]

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTINE PIETRZYK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FLO HEALTH, INC., a Delaware corporation,<br><br>Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

*Apps that collect, use, and share sensitive health information can provide valuable services, but consumers need to be able to trust these apps. We are looking closely at whether developers of health apps are keeping their promises and handling sensitive health information responsibly.*

– Andrew Smith, Director of the FTC's Bureau of Consumer Protection[1]

---

[1] *Developer of Popular Women's Fertility-Tracking App Settles FTC Allegations that it Misled Consumers about the Disclosure of their Health Data*, FTC, Jan. 13, 2021, *available at*

*Currently, there are over 50 symptoms to track, and this number is likely to double in the future.*

– Yuri Gurski, Flo Health Inc. founder and president[2]

## INTRODUCTION

1.    This is an action brought by Plaintiff Justine Pietrzyk ("Plaintiff") against Defendant Flo Health, Inc. ("Flo Health" or "Defendant") for improperly selling her private heath data to Google LLC ("Google"); Google's marketing service, Fabric ("Fabric"); Facebook, Inc., through its Facebook Analytics tool ("Facebook"); marketing firm AppsFlyer, Inc. ("AppsFlyer"); analytics firm Flurry, Inc. ("Flurry"), and other third parties, for the purpose of targeted advertising. Flo Health's actions blatantly flouted its own Terms of Use and Privacy Policies and violated several California and federal laws.

2.    Flo Health owns and develops the Flo Period & Ovulation Tracker ("Flo App" or "App"), one of the most popular health and fitness mobile applications.

3.    The Flo App purports to use artificial intelligence to provide advice and assistance related to women's health, such as serving as an ovulation calendar, period tracker, pregnancy guide, and wellness and lifestyle tracker.

4.    Flo Health touts that its app is the "#1 mobile product for women's health." The Flo App has been installed more than 165 million times and has over 38 million monthly active users. The App has also been rated the #1 period tracker in the United States based on active audience and the #1 most downloaded health app in the Apple App Store.

---

https://www.ftc.gov/news-events/press-releases/2021/01/developer-popular-womens-fertility-tracking-app-settles-ftc.

[2] Berenice Magistretti, *Flo raises $5 million for its AI-powered period-tracking app*, Venture Beat, Aug. 11, 2017, *available at* https://venturebeat.com/2017/08/11/flo-raises-5-million-for-its-ai-powered-femtech-app/.

5.      In order to use the Flo App, millions of users—including Plaintiff—provide Flo Health with personally identifying information (*e.g.*, their names, email addresses, dates of birth, and places of residence), along with intimate details about their sexual health, menstruation cycles, gynecological health, and physical well-being through a series of "survey questions." These questions cover extremely personal topics and include, for example: (1) "do you experience any pain during sex?"; (2) "how often do you have sex?"; (3) "how often do you masturbate?"; (4) "have you noticed a decrease in sexual desire?"; (5) "are you sexually active during your period?"; and (6) "What type of relationship do you have at present?"

6.      Users also provided intimate, personal health details in response to probing survey questions about health and wellness, such as: (1) "do you smoke?"; (2) "how often do you experience stress?; (3) "do you want to change your weight?"; (4) "do you follow a particular diet?"; (5) "how often do you exercise?"; (6) "do you get yeast infections?"; (6) "do you have any chronic diseases?"; and (7) "do you have any reproductive system diseases?"

7.      Within the first few minutes of using the Flo App, users answer over thirty survey questions like these. As users continue to use the app, they are encouraged by Flo Health to provide more and more intimate health data, including daily information about whether they have their period, their weight, how long they slept, whether they had sex (as well as their sex drive, if sex was unprotected, or if they masturbated), their mood (ranging from "calm" to "very self-critical,") and if they have any health symptoms (like headaches, breast tenderness, acne, or fatigue).

8.      Plaintiff and Class members provided this information to Flo Health based on the company's repeated assurances that their intimate health data would remain protected and confidential and would not be disclosed to third parties.

9.      Flo Health's Privacy Policies and public assurances have claimed—time and time again—that Flo Health would not share users' intimate health data with anyone. Flo Health's

website touts that "[p]rivacy in the digital age is of utmost importance. Flo provides a secure platform for millions of women globally."[3]

10.    Similarly, multiple prior versions of Flo Health's Privacy Policy stated, in all capital letters, that it "WILL NOT TRANSMIT ANY OF YOUR PERSONAL DATA TO THIRD PARTIES, EXCEPT IF IT IS REQUIRED TO PROVIDE THE SERVICE TO YOU (E.G. TECHNICAL SERVICE PROVIDERS), UNLESS WE HAVE ASKED FOR YOUR EXPLICIT CONSENT." Flo Health assured users that these third parties would not receive "survey results," "information regarding your marked cycles, pregnancy, symptoms, notes" or information about "which articles [users] view"—i.e., users' intimate health data. Flo Health further assured users that these third parties "will never use such information for any other purpose except to provide services in connection with the App."[4]

11.    These assurances were patently false. In February 2019, a report published by the *Wall Street Journal* revealed that, despite Flo Health's explicit statements in its Privacy Policy that it would not share intimate health data, Flo Health had spent years selling the intimate health data that users entered into the Flo App to dozens of third parties, including major advertising companies such as Facebook and Google who were free to use this data for their own purposes.

12.    In response to this revelation, the Federal Trade Commission ("FTC") launched its own investigation into Flo Health's data privacy and disclosure practices and ultimately filed a complaint, charging Flo Health with making a variety of fraudulent misrepresentations to Flo App users in violation of their privacy rights.

13.    On January 13, 2021, Flo Health entered into a settlement with the FTC that prohibited Flo Health from further misrepresenting the purposes for which or entities to whom

---

[3] *About Us*, FLO HEALTH, INC., https://flo.health/our-mission (last visited Feb. 11, 2021).

[4] *Privacy Policy (archived)*, FLO HEALTH, INC., https://flo.health/privacy-policy-archived/may-25-2018 (effective May 25, 2018); https://flo.health/privacy-policy-archived/aug-6-2018 (effective Aug. 6, 2018); https://flo.health/privacy-policy-archived/feb-19-2019 (effective Feb. 19, 2019).

it discloses users' intimate health data. The FTC also required Flo Health to obtain an independent review of its Privacy Policy, obtain affirmative express user consent before disclosing health data, and notify third parties to destroy any previously-received users' intimate health data.[5]

14.     If Plaintiff and Class members had known that Flo Health would sell their intimate health data, they would not have used the Flo App.

15.     Flo Health's data disclosure practices constitute an extreme invasion of Plaintiff and Class members' right to privacy and violate numerous state and federal laws.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C § 1332(d), because the amount in controversy for the Class exceeds $5,000,000 exclusive of interest and costs, there are more than 100 putative class members as defined below, and minimal diversity exists because a significant portion of putative class members are citizens of a state different from the citizenship of Defendants.

17.     This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 since this suit is brought under the laws of the United States, i.e., the Stored Communications Act, 18 U.S.C. § 2701, *et seq.*, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the remaining state common law and statutory claims as these state law claims are part of the same case or controversy as the federal statutory claim over which the Court has original jurisdiction.

18.     This Court has specific personal jurisdiction over Flo Health because it consented to jurisdiction in this District in its Terms of Use, which states:

> Any dispute arising from this Agreement shall be governed by the laws of the State of California without regard to its conflict of law provisions. **SOLE AND**

---

[5] *Developer of Popular Women's Fertility-Tracking App Settles FTC Allegations that it Misled Consumers about the Disclosure of their Health Data*, FTC, Jan. 13, 2021, *available at* https://www.ftc.gov/news-events/press-releases/2021/01/developer-popular-womens-fertility-tracking-app-settles-ftc.

**EXCLUSIVE JURISDICTION FOR ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE IN AN APPROPRIATE STATE OR FEDERAL COURT LOCATED IN SAN FRANCISCO COUNTY, STATE OF CALIFORNIA . . . .**[6]

19.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), (c), and (d) because Flo Health transacts business in this District and a substantial portion of the events giving rise to the claims occurred in this District.

20.    Intra-district Assignment: A substantial part of the events and omissions giving rise to the violations of law alleged herein occurred in the County of San Mateo, and as such, this action may properly be assigned to the San Francisco or Oakland divisions of this Court pursuant to Civil Local Rule 3-2(c).

## PARTIES

21.    Plaintiff Justine Pietrzyk ("Plaintiff") is a natural person and citizen of the Commonwealth of Pennsylvania and a resident of Philadelphia County.

22.    Plaintiff Pietrzyk downloaded the free version of the Flo App from the Apple App Store around January 2020 and has been an active user ever since.

23.    Plaintiff Pietrzyk provided, and has continued to provide, Flo Health with her intimate health data, including information about her health and wellness, menstruation cycle, sexual activity, and other health symptoms in response to Flo Health's survey questions and as part of her regular use of the Flo app.

24.    Plaintiff Pietrzyk believed and relied upon Flo Health's promises that her intimate health data would stay private and that Flo Health would not disclose this information to anyone including third parties, like Facebook or Google. Plaintiff Pietrzyk did not consent or provide permission for Flo Health to do so.

---

[6] *Terms of Use*, FLO HEALTH, INC., https://flo.health/terms-of-service (effective Feb. 5, 2020) (emphasis in original).

25.     In violation of its own Privacy Policy and public assurances, Flo Health disclosed Plaintiff Pietrzyk's intimate health data without her knowledge or consent to third parties. Plaintiff Pietrzyk would not have used the Flo App had she known that Flo Health would do so.

26.     Defendant Flo Health, Inc., is a Delaware corporation. Its registered office is located at 1013 Centre Road, Suite 403-B, Wilmington, Delaware, 19805. Flo Health, Inc. and its executive officers and directors maintain the company's principal executive office at 541 Jefferson Avenue, Suite 100, Redwood City, California, 94063.

## BACKGROUND

### I.    History of Flo Health, Inc.

27.     Flo Health, Inc. was founded in 2015 by Belarusian entrepreneur Yuri Gurski. That year, the company released the Flo App, the first mobile application to make use of artificial intelligence to accurately predict reproductive cycle.

28.     Since it was first released, the Flo App has been available to download for free from the Google Play Store and the Apple App Store, where it was described as "a smart and simple period tracker, helpful pregnancy week by week app, accurate ovulation and fertility calendar, and PMS symptoms tracker for women all over the world."

29.     As Flo App's features expanded, the App requested a wider and wider range of personal information from its users, including intimate personal details like a user's history of contraceptive methods, vaginal discharge, diseases, water intake, weight, pains and other physical or mental symptoms, mood swings, and sexual activity (including the users' sexual desire levels, whether they experience pain during sex, or did not use protection). Users can also write "personal notes" to log additional information in the App.

30.     That same year, Flo Health gained international attention by working with the United Nations Population Fund as part of its "Let's Talk About It, Period." campaign, which aimed to increase public awareness of social and health issues related to menstruation. As part of this campaign, model and philanthropist Natalia Vodianova celebrated the Flo App as "a

community of over 10 million women that are able to be completely anonymous and therefore feel more open when talking about periods."[7]

31.    Throughout this period, Flo App steadily grew more popular. In 2019, it was the most downloaded health and fitness app in the Apple App store, and was Apple's "App of the Day" in over 30 countries. By the end of 2020, more than 100 million users worldwide had downloaded the Flo App.

32.    Due to its overwhelming popularity, Flo Health has managed to gather intimate health details from over 16 million users in the United States, including Plaintiff. Users provided this information based on Flo Health's repeated assurances that this information would remain private and that it would not share users' intimate health data.

33.    Flo Health promised that it would, under no circumstances, share users' intimate health data without their consent. While Flo Health disclosed it might share "certain" information with third-parties who it uses to "supply software applications, web hosting an other technologies for the App," Flo Health explicitly stated this would not include "information regarding your marked cycles, pregnancy, symptoms, notes and other information entered by [users]" or "survey results" and "articles [users] view."

34.    However, in February 2019, the *Wall Street* Journal released a bombshell report revealing for the first time that Flo Health sells its users' intimate health data to third parties, like Facebook and Google, including when a user was menstruating or intended to get pregnant.[8]

35.    Further investigations have revealed that Facebook was not the only third-party to which Flo Health sold consumers' intimate health data. Between at least 2016 and 2019, Flo Health contracted with dozens of third-party firms to provide, among other things, various

---

[7] Lisa Niven, *Natalia Vodianova: Let's Talk About Periods*, Vogue UK, Aug. 15, 2017, *available at* https://www.vogue.co.uk/article/natalia-vodianova-flo-app-periods.

[8] Sam Schechner and Mark Secada, *You Give Apps Sensitive Personal Information. Then they Tell Facebook*, WALL STREET JOURNAL, Feb. 22, 2019, *available at* https://www.wsj.com/articles/you-give-apps-sensitive-personal-information-then-they-tell-facebook-11550851636.

marketing and analytics services in connection with the Flo App. These firms included Facebook, Google, and mobile analytics firms AppsFlyer and Flurry.

36.    Despite Flo Health's representations that third parties would not receive users' survey results and "information regarding [their] marked cycles, pregnancy, symptoms, notes and other information entered by [users]," Flo Health in fact disclosed and sold users' intimate health data to third parties, including some of the largest advertising companies in the country.

37.    Further, despite Flo Health's promise that third parties would only receive data "as necessary to perform their work" and "will never use such information for any other purpose except to provide services in connection with the App," Flo Health did not contractually limit how these third parties could use this data.

38.    In fact, the terms of service governing Flo Health's agreement with these third parties allowed them to use Plaintiff and the Class' extremely personal information for any purpose they wanted, completely unrelated to services provided in connection with the App.

39.    Flo Health entered into these contracts to disclose and sell users' sensitive health data without Plaintiff's and Class members' knowledge or consent, in violation of their privacy rights and federal and state law.

## II.    Flo Health Designed its App to Facilitate the Collection of Users' Private Data.

40.    Flo Health designed the Flo App to request users to input intimate health and lifestyle-related information under the guise that they would receive better services. When a user creates a new account on the Flo App, the app will ask the user several question related to the timing of her menstrual cycle, the discomfort of her menstrual cycle, mood swings, preferred birth control methods, reproductive health disorders, and her level of satisfaction with her sex life and romantic relationships. Some of these questions are reflected in the screenshots below:

**Do you experience discomfort due to any of the following?**

| Painful menstrual cramps | ○ |
| PMS symptoms | ○ |
| Unusual discharge | ○ |
| Heavy menstrual flow | ○ |
| Mood swings | ○ |
| Other | ○ |
| No, nothing bothers me | ✔ |

Next

**What would you like to change about your sex life?**

| Nothing, I'm totally satisfied | ○ |
| I'm not sexually active now | ○ |
| Painful sex | ○ |
| Difficulty with orgasm | ○ |
| Low libido | ○ |
| Communication | ○ |
| Poor body image | ○ |
| Other | ✔ |

Next

CLASS ACTION COMPLAINT

41.    The Flo App asks users to input over 30 responses to intimate, personal questions like these, all while setting up the App for the first time, including the following:

    a.    How long have you been trying to conceive?

    b.    Do you have any reproductive diseases?

    c.    What medication are you currently taking? How often?

    d.    How often do you have sex?

    e.    Do you experience any pain during sex?

    f.    How often do you masturbate?

    g.    Is it easy for you to orgasm?

42.    The Flo App also regularly encourages users to update the App with vast quantities of additional intimate health-related information as they continue to use the App. For example, the interface of the Flo App suggests that users should "[l]og your menstruation days

in a handy period calendar, ovulation and fertility tracker, schedule menstrual cycle reminders, record moods and PMS symptoms, use a due date calculator, follow a pregnancy calendar . . . ." As the screenshots below demonstrate, the information collected is extremely sensitive and includes information about a user's sexual activity, sex drive, mood, premenstrual systems, and vaginal discharge, among other things:

 

43.    Flo Health entices users to input this information to "stay on top of [their] health," explaining that "[l]ogging symptoms helps Flo detect possible imbalances in your body and advi[s]e you to see a doctor."

44.    By encouraging millions of users to provide extensive information via the Flo App about their emotional and physical health, as well as their personal lifestyles and sexual

activity, Flo Health has collected massive volumes of deeply intimate health data about millions of consumers, including Plaintiff.

45.    Despite Flo Health's repeated representations from 2017 to 2019 that it would protect users' intimate private information, Flo Health contracted with numerous third parties to sell them private health information obtained from Flo App users, which they could then use for their own purposes, including advertising and product improvement unrelated to the Flo App.

46.    Specifically, Flo Health provided third parties with "Standard App Events" and "Custom App Events" created each time users interact with the Flo App. "Standard App Events" are records of routine app functions, such as launching or closing the app, while "Custom Apps Events," are records of user-app interactions unique to the app itself. For example, when a user enters menstruation dates, her weight, sleep cycle, mood, physical or mental symptoms, or any other information in the Flo App, the Flo App registers the user's interaction with that feature as a Custom App Event. Through these Custom App Events, every single interaction within the Flo App is recorded and stored.

47.    Flo Health receives and stores a record of all the Custom App Events that occur in the Flo App across its users' devices. Flo Health claims to make use of these records to improve the Flo App's functionality and identify which features are likely to interest new users.

48.    According to its Privacy Policy, Flo Health retains user private data "so long as your account is active or needed to provide you Services." Flo Health also retains a user's private data for a period of time after she deletes the Flo App or deactivates her account as backup in case she decides to re-active the services.

49.    Flo Health purposefully designed the Flo App's Custom App Events to have descriptive titles that reflect the content of each event. For example, when a user enters the week of their pregnancy into the App's calendar, the Flo App records the Custom App Event as "R_PREGNANCY_WEEK_CHOSEN." When a user selects a feature to receive menstruation reminders in the "wanting to get pregnant branch" of the app, the Flo App records the Custom App Event as "P_ACCEPT_PUSHES_PERIOD."

50.     As early as June 2016, Flo Health integrated software development tools, known as software development kits ("SDKs") into the Flo App. These SDKs were provided by third-party marketing and analytics firms, such as Facebook, Google, Flurry and AppsFlyer, and allowed these firms to review information that users put into the Flo App through Custom App Events.

51.     Because of their descriptive titles, the Custom App Events convey intimate details about a users' health, including their menstruations, fertility, or pregnancies. Thus, a Flo Health developer or third party reviewing a record of a user's Custom App Events learns intimate health information about that user, including their reproductive cycle and family planning decisions.

52.     By including intimate health information in the title of the Custom App Events, Flo Health disclosed user's intimate health information to third parties. This directly contradicts Flo Health's statements in its Privacy Policies that it would not disclose this information.

53.     Despite assurances made to consumers, the company spent years disclosing the intimate health information of millions of users in the form of Custom App Events. For example, Flo Health sold Custom App Event information to:

      a.  Facebook from at least June 2016 to February 2019;

      b.  Flurry from at least June 2016 to February 2019;

      c.  Google's subsidiary Fabric from at least November 2016 to February 2019;

      d.  AppsFlyer from at least May 2018 to February 2019; and

      e.  Google from at least September 2018 to February 2019.

**III.     Flo Health's Failure to Obtain User Consent**

54.     Between 2017 and 2019, Flo Health made repeated representations to Flo App users, promising that it would keep the intimate health data they entered into the App private, and that Flo Health would only use Flo App users' data in order to provide and improve Flo App's services.

55.    Based on Flo Health's representations and the guarantees made in its Privacy Policy, millions of users entrusted Flo Health with intimate information regarding their physical and mental health, romantic relationships, sex life, and lifestyle preferences.

56.    Flo Health's current Privacy Policy assures customers that "[w]hen you use Flo, you are trusting us with intimate personal information. We are committed to keeping that trust, which is why our policy as a company is to take every step to ensure that individual user's data and privacy rights are protected."[9]

57.    More specifically, versions of the Flo Health Privacy Policy effective between August 28, 2017 and February 19, 2019 stated that Flo Health "may share certain" personal data with third parties, but only "information that is reasonably necessary to perform their work" which involves "supply[ing] software applications, web hosting, and other technologies for the App."[10]

58.    The same Flo Health Privacy Policies included a section titled "Sharing you[r] personal data and information," which contained the general statement that any information shared with third parties "**exclud[ed] information regarding your marked cycles, pregnancy, symptoms**, notes and other information that is entered by you and that you do not elect to share." That section also stated that third parties could not use Flo App users' personal information "**for any other purpose except to provide services in connection with the App.**"[11]

---

[9] *Privacy Policy*, FLO HEALTH, INC., https://flo.health/privacy-policy (effective Oct. 24, 2020).

[10] *Privacy Policy (archived)*, FLO HEALTH, INC., https://flo.health/privacy-policy-archived/aug-28-2017 (effective Aug. 28, 2017); https://flo.health/privacy-policy-archived/nov-13-2017 (effective Nov. 13, 2017); https://flo.health/privacy-policy-archived/may-25-2018 (effective May 25, 2018); https://flo.health/privacy-policy-archived/july-16-2018 (effective Jul. 16, 2018); https://flo.health/privacy-policy-archived/aug-6-2018 (effective Aug. 6, 2018); https://flo.health/privacy-policy-archived/feb-19-2019 (effective Feb. 19, 2019).

[11] *Id.* (emphases added).

# 4. Sharing you personal data and information

1. Personal Data We Share with Third Parties. We may share certain Personal Data, excluding information regarding your marked cycles, pregnancy, symptoms, notes and other information that is entered by you and that you do not elect to share, with third party vendors who supply software applications, web hosting and other technologies for the App. Third parties will not have access to our survey results and we will not reveal information about which articles you view. We will only provide these third parties with access to information that is reasonably necessary to perform their work or comply with the law. Those third parties will never use such information for any other purpose except to provide services in connection with the App. Apart of the cases regulated by this Privacy Policy we will never transfer your Personal Data to any third party without your prior explicit consent.

59.     The same "Sharing you[r] personal data and information" section of the Flo Health Privacy Policy in effect between May 25, 2018 and February 19, 2019 also addressed certain specific third-party services. For example, subsections 4.1.2 and 4.1.11 stated that Flo Health would not disclose "any data related to health" to either of the mobile analytics firms AppsFlyer or Flurry:[12]

> "AppsFlyer is a mobile marketing platform. We may share certain non-identifiable information about you and some Personal Data (**but never any data related to health**) in order to carry out marketing activities and provide you better and more targeted, tailor-made service."

*        *        *

> We may share certain non-identifiable information about you and some Personal Data (**but never any data related to health**) with Flurry."

60.     Consistent with the assurances made in the Flo Health Privacy Policy, new users of the Flo App receive a notification, informing them that personal data disclosed to AppsFlyer

---

[12] *Privacy Policy (archived)*, FLO HEALTH, INC., https://flo.health/privacy-policy-archived/may-25-2018 (effective May 25, 2018); https://flo.health/privacy-policy-archived/july-16-2018 (effective Jul. 16, 2018); https://flo.health/privacy-policy-archived/aug-6-2018 (effective Aug. 6, 2018); https://flo.health/privacy-policy-archived/feb-19-2019 (effective Feb. 19, 2019) (emphases added).

is "strictly limited" to technical identifiers, age groups, subscription status, and data indicating that the App has been opened by the user.



61.    The same "Sharing you[r] personal data and information" section of the Flo Health Privacy Policy in effect between May 25, 2018 and February 19, 2019 also addressed activities of Facebook, Google, and Google's subsidiary, Fabric.  Subsections 4.1.1, 4.1.3, and 4.1.4 stated that these third parties would only receive "non-personally identifiable information," "[p]ersonal Data like device identifiers," or "device identifiers."

62.    Specifically, the Flo Privacy Policy stated as follows:[13]

"**Fabric may use device identifiers** that are stored on your mobile device and allow us to analyze your use of the App in order to improve our App feature [sic].

\*        \*        \*

We use Facebook Analytics tools to track installs of our App. Normally, Facebook collects **only non-personally identifiable information,** though some **Personal Data like device identifiers** (IDFA or Android advertising ID) may be transferred to Facebook.

\*        \*        \*

We utilize Google Analytics and Google Analytics for Firebase to track installs of our App. Normally, Firebase and Google collect only non-personally identifiable information, though some Persona Data like device identifiers may be transferred to Google Analytics for Firebase and Google Analytics. . . . "

63.    Notably, the "Sharing you[r] personal data and information" section of the Privacy Policy <u>did not</u> indicate that these third parties would receive access to any record of the Custom App Events (containing intimate health data) registered by the Flo App.[14]

64.    In September 2019, Flo Health again changed its Privacy Policy to state, "**Provided we receive your consent as appropriate under applicable law**, we may share some of your Personal Data with AppsFlyer, a mobile marketing platform." Yet even under this change, Flo Health stated that the Personal Data that might be shared with third parties—and only after a user opted in—was "strictly limited" to technical identifiers such as IP address; age group; subscription status; and the fact of application launch.[15]

65.    By disclosing Custom App Events that users generated through interacting with the Flo App, Flo Health violated the terms of its Privacy Policies. As explained above, Custom App Events include explicit, intimate health data related to a user's reproductive cycles, fertility,

---

[13] *Id.* (emphases added).

[14] *Id.*

[15] *Privacy Policy*, FLO HEALTH, INC., https://flo.health/privacy-policy-archived/september-19-2019 (effective Sept. 19, 2019) (emphasis added).

and other health-related information. When Flo Health shared access to Custom App Events with third parties, Flo Health disclosed intimate "data related to health."

66.    Flo Health further violated the guarantees made in its Privacy Policy by agreeing to contractual terms that directly contradicted its Privacy Policy. When entering into contracts with numerous third parties, Flo Health agreed to boilerplate terms of service that permitted the third party to use any information obtained from Flo App users for the third party's own purposes, including purposes explicitly excluded by the Flo Privacy Policy, such as advertising and marketing:

   a.  Facebook's Business Tools Terms stated: "We use [aggregated] Even Data to personalize the features and content (including ads and recommendations) we show people on and off our Facebook Company products . . . . We may also use Event Data . . . For research and development purposes, and to . . . improve the Facebook Company Products." That "Event Data" includes Custom App Events.

   b.  Google Analytics's Terms of Service stated: "Google and its wholly owned subsidiaries may retain and use . . . information collected in [Flo Health's] use of the service."

   c.  AppsFlyer's Terms of Use stated: "You hereby allow AppsFlyer to collect, store, use and process Customer Data," where "Customer Data" was defined to include "data concerning the characteristics and activities" of app users.

   d.  The Fabric Software and Services Agreement stated: "[Flo Health] acknowledges and agrees that Google [Fabric] may use Usage Data for its own business purposes" where "Usage Data" was defined to mean "all information, data and other content, not including any [identifying data], received by Google related to [Flo Health]'s use of the Fabric Technology."[16]

67.    As a result, at least one of these third parties, Facebook, used Flo App Custom Event data for its own research and development purposes.

---

[16] FTC Complaint, *In the Matter of Flo Health, Inc.*, No. 1923133, *available at* https://www.ftc.gov/system/files/documents/cases/flo_health_complaint.pdf ("FTC Complaint").

**IV.    Plaintiff and Class Members Have a Reasonable Expectation of Privacy.**

68.    Plaintiff and Class members have a reasonable expectation of privacy in their intimate health data, which Defendants collected, stored, and disclosed to third parties.

69.    A number of studies examining the collection and disclosure of consumers' intimate personal data confirms that the disclosure of intimate personal data from millions of individuals, as Flo Health has done here, violates expectations of privacy that have been established as general social norms.

70.    Privacy polls and studies uniformly show that the overwhelming majority of Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares its customers' personal data.

71.    For example, a recent study by Consumer Reports shows that 92% of Americans believe that internet companies and websites should be required to obtain consent before selling or sharing their data and the same percentage believe internet companies and websites should be required to provide consumers with a complete list of the data that has been collected about them.[17] Moreover, according to a study by Pew Research, a majority of Americans, approximately 79%, are concerned about how data is collected about them by companies.[18]

72.    Flo Health purported to act consistently with consumer expectations by promising not to share their intimate health data with third parties and by promising that the limited data that they did share would only be used to provide the Flo App's services.

73.    Despite these assurances, Flo Health disclosed users' intimate health data to third parties without their consent, allowing these companies to use this information for any purpose.

---

[17] *Consumers Less Confident About Healthcare, Data Privacy, and Car Safety, New Survey Finds,* CONSUMER REPORTS, May 11, 2017, *available at* https://www.consumerreports.org/consumer-reports/consumers-less-confident-about-healthcare-data-privacy-and-car-safety/.

[18] *Americans and Privacy: Concerned, Confused, and Feeling Lack of Control Over Their Personal Information*, PEW RESEARCH CENTER, Nov. 18, 2019, *available at* https://www.pewresearch.org/internet/2019/11/15/americans-and-privacy-concerned-confused-and-feeling-lack-of-control-over-their-personal-information/.

CLASS ACTION COMPLAINT

This constitutes a violation of Plaintiff's and Class members' privacy interests, as demonstrated by users' outrage when they learned that Flo Health disclosed their intimate health data to third parties. Following publication of the *Wall Street Journal* report exposing Flo Health's privacy violations, Flo Health received several hundred complaints from Flo App users about the unauthorized disclosures of health information to Facebook. For example, users stated:

     a.  "I'm absolutely disgusted at this invasion of my most personal information."

     b.  "This is private personal data and I feel disgusted that you are now making this data available to third parties."

     c.  "Why would you EVER think it is ok to share that personal, private information with a third party?"[19]

74.    Alice Berg, a 25-year old student, told the *Wall Street Journal*, "I think it's incredibly dishonest of them that they're just lying to their users especially when it comes to something so sensitive."[20]

75.    Additionally, following the *Wall Street Journal* publication, over 100 Flo App users asked Flo Health to delete their accounts and/or data or told Flo Health they were deleting, or would be deleting, the Flo App.

**V.    The FTC Has Filed Suit and Entered into a Settlement Based on Flo Health's Privacy Violations**

76.    In response to the *Wall Street Journal's* February 2019 article revealing Flo Health's invasive data sharing practices, the FTC launched an investigation into Flo Health's potential violation of state, federal, and international privacy laws.

---

[19] FTC Complaint.

[20] Sam Schechner and Mark Secada, *You Give Apps Sensitive Personal Information. Then they Tell Facebook*, WALL STREET JOURNAL, Feb. 22, 2019, *available at* https://www.wsj.com/articles/you-give-apps-sensitive-personal-information-then-they-tell-facebook-11550851636.

77.     In January 2020, the FTC filed a complaint against Flo Health. The FTC stated that its investigation revealed that Flo Health disclosed the intimate health information of millions of Flo App users to third parties, such as Facebook, Google, Fabric, AppsFlyer and Flurry.

78.     The FTC's investigation further determined that Flo Health conveyed intimate health data in the form of Custom App Events to third parties between at least 2016 and 2019.

79.     The FTC determined that Flo Health violated the privacy of Flo App users in several ways, including by: violating its Privacy Policy by disclosing its users health information to third parties; violating its Privacy Policy by disclosing information beyond non-personally identifiable information, device identifiers, or personal data to third parties; and violating its Privacy Policy by failing to limit third-party use of its users personal information, among other claims.[21]

80.     Flo Health entered into a settlement with the FTC over its alleged privacy violations on January 13, 2021.

81.     The proposed settlement (currently subject to public comment) would require Flo Health to obtain an independent review of its privacy practices and obtain the consent of app users before making further disclosures of their health information.[22]

82.     The proposed settlement would also prohibit Flo Health from further misrepresenting the purposes for which it, or entities to whom it discloses data, collect, maintain, use, or disclose the data; how much consumers can control these data uses; its compliance with any privacy, security, or compliance program; and how it collects, maintains, uses, discloses, deletes, or protects users' personal information.

---

[21] FTC Complaint.

[22] FTC Agreement Containing Consent Order, *In the Matter of Flo Health, Inc.*, No. 1923133, *available at* https://www.ftc.gov/system/files/documents/cases/flo_health_order.pdf.

1

## **TOLLING, CONCEALMENT, AND ESTOPPEL**

2      83.    The applicable statutes of limitation have been tolled as a result of Flo Health's

3   knowing and active concealment and denial of the facts alleged herein, namely its practice of

4   secretly disclosing intimate health data to third parties without user consent.

5      84.    Among other things, Flo Health made misrepresentations and omissions of

6   material fact both publicly and in its Privacy Policy regarding its data sharing practices. Flo

7   Health intentionally concealed the nature and extent of its actions and intentions. To the extent

8   that the Flo App made statements regarding Flo Health's service or its Privacy Policies, Flo

9   Health either approved those statements or failed to timely correct them in service of their

10   ongoing scheme to conceal the true nature of their conduct.

11      85.    Plaintiff and Class members could not, with due diligence, have discovered the

12   full scope of Flo Health's conduct, due in no small part to Flo Health's deliberate efforts to

13   conceal it. All applicable statutes of limitation also have been tolled by operation of the discovery

14   rule. Under the circumstances, Flo Health was under a duty to disclose the nature and

15   significance of its data and Privacy Policies and practices, but did not do so. Flo Health therefore

16   is estopped from relying on any statute of limitations.

17      86.    Flo Health's fraudulent concealment and omissions are common to Plaintiff and

18   all Class members.

19

## **CLASS ALLEGATIONS**

20      87.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23

21   individually and on behalf of the following nationwide Class:

22
   **All natural persons in the United State States who used the Flo App between**
23   **June 2016 and the present.**

24      88.    Excluded from the proposed Class are: (1) any Judge or Magistrate presiding over

25   this action and any members of their families; (2) the Defendant, Defendant's subsidiaries,

26   parents, successors, predecessors, and any entity in which the Defendant or its parent has a

27

28

controlling interest and their current or former employees, officers, and directors; and (3) Plaintiff's counsel and Defendant's counsel.

89.    **Numerosity**: The exact number of members of the Class is unknown and unavailable to Plaintiff at this time but likely consists of millions of individuals, making individual joinder in this case impracticable. Class members can be readily identified through Defendant's records.

90.    **Predominant Common Questions**: The Class's claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class members. Common questions for the Class include, but are not limited to, the following:

   a.    Whether Defendant violated Plaintiff's and Class members' privacy rights;

   b.    Whether Defendant's acts and practices complained of herein would be highly offensive to a reasonable person;

   c.    Whether Defendant's acts and practices amount to a breach of contract;

   d.    Whether Defendant's acts and practices amount to a breach of implied contract;

   e.    Whether Defendant was unjustly enriched;

   f.    Whether Defendant violated the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*;

   g.    Whether Plaintiff and the Class members are entitled to equitable relief, including but not limited to, injunctive relief, restitution, and disgorgement; and

   h.    Whether Plaintiff and the Class members are entitled to actual, statutory, punitive or other forms of damages, and other monetary relief.

91.    **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. The claims of Plaintiff and the members of the Class arise from the same conduct by Defendant and are based on the same legal theories.

92.    **Adequate Representation:** Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel

competent and experienced in complex litigation and class actions, including litigations to remedy privacy violations. Plaintiff has no interest that is antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Class.

93.    **Substantial Benefits**: This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense, and will promote uniform decision-making.

94.    Plaintiff reserves the right to revise the foregoing class allegations and definition based on facts learned and legal developments following additional investigation, discovery, or otherwise.

### CALIFORNIA LAW APPLIES TO THE ENTIRE CLASS

95.    California substantive laws apply to every member of the Class, regardless of where in the United States the Class members reside. Flo Health's Terms of Use states "These Terms of Use (this 'Agreement') is a legal agreement between [users] and Flo Health, Inc."

96.    This agreement states that "[a]ny dispute arising from this Agreement shall be governed by the laws of the State of California without regard to its conflict of law provisions. Sole and exclusive jurisdiction for any action or proceeding arising out of or related to this agreement shall be in an appropriate state or federal court located in San Francisco County, State of California . . . ."[23]

---

[23] *Terms of Use*, FLO HEALTH, INC., https://flo.health/terms-of-service (effective Feb. 5, 2020).

## CLAIMS FOR RELIEF

### FIRST CLAIM
### Common Law Invasion of Privacy – Intrusion Upon Seclusion
### (On Behalf of Plaintiff and the Class)

97.     Plaintiff re-alleges and incorporates by reference the preceding allegations as if fully restated herein.

98.     A plaintiff asserting claims for intrusion upon seclusion must plead (1) that the defendant intentionally intruded into a place, conversation, or matter as to which plaintiff had a reasonable expectation of privacy; and (2) that the intrusion was highly offensive to a reasonable person.

99.     Flo Health's disclosure of Plaintiff's and Class members' intimate health data, including information concerning physical and emotional health, family planning, and personal relationships, as well as their interests in making intimate personal decisions regarding sexual and other personal activities, constitutes an intentional intrusion upon Plaintiff's and Class members' solitude or seclusion in that Flo Health shared these intimate personal details that were intended to stay private with third parties without users' consent, and despite Flo Health's express promises that it would not do so.

100.     Plaintiff and Class members had a reasonable expectation of privacy in their intimate health data. Plaintiff and Class members did not consent to, authorize, or know about Flo Health's intrusion at the time it occurred. Plaintiff and Class members never agreed that Flo Health could disclose their intimate health data.

101.     Flo Health's intentional intrusion on Plaintiff's and Class members' solitude or seclusion without consent would be highly offensive to a reasonable person. Plaintiff and Class members reasonably expected, based on Flo Health's repeated assurances, that their intimate health data would not be disclosed. Defendant's conduct is especially egregious as it failed to contractually restrict what third parties can do with Plaintiff's and Class members' intimate health data once it is disclosed.

102.   Given the intimate nature of the data Flo Health collected and disclosed, such as private details about users' sexual activity, menstrual cycles, and physical and mental health, this kind of intrusion would be (and in fact is) highly offensive to a reasonable person.

103.   The highly offensive nature of Flo Health's intentional intrusion into Plaintiff's and Class members' personal affairs is confirmed by its FTC settlement, public outrage, and hundreds of user complaints received by Flo Health after its data sharing practices were disclosed, instructing Flo Health to delete their data or their account or that they would be deleting their account.

104.   The disclosure of intimate health data from millions of individuals without consent is also highly offensive because it violates expectations of privacy that have been established by general social norms. Privacy polls and studies consistently show that the overwhelming majority of Americans believe one of the most important privacy rights is the need for an individual's affirmative consent before personal data, like intimate health data, is harvested or shared.

105.   As a result of Defendant's actions, Plaintiff and Class members have suffered harm and injury, including but not limited to an invasion of their privacy rights.

106.   Plaintiff and Class members have been damaged as a direct and proximate result of Defendant's invasion of their privacy and are entitled to just compensation, including monetary damages.

107.   Plaintiff and Class members seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate Plaintiff and Class members for the harm to their privacy interests as well as a disgorgement of profits made by Flo Health as a result of its intrusions upon Plaintiff's and Class members' privacy.

108.   Plaintiff and Class members are also entitled to punitive damages resulting from the malicious, willful and intentional nature of Defendant's actions, directed at injuring Plaintiff and Class members in conscious disregard of their rights. Such damages are needed to deter Defendant from engaging in such conduct in the future.

109.    Plaintiff also seeks such other relief as the Court may deem just and proper.

## SECOND CLAIM
### Breach of Contract
### (On Behalf of Plaintiff and the Class)

110.    Plaintiff re-alleges and incorporates by reference the preceding allegations as if fully restated herein.

111.    Plaintiff entered into a contract with Defendant by downloading and using the Flo App. In connection with using the Flo App, both parties agree to abide by Flo Health's Terms of Use ("TOU"). Plaintiff has fully complied with her obligations under the TOU with regard to her use of Flo Health's product and services.

112.    The TOU states that "[b]y creating an account or accessing or using the App, you acknowledge that you accept and agree to be bound by the terms of this Agreement." Plaintiff and Defendant are subject to Flo Health's Privacy Policy, which is incorporated into the TOU.[24]

113.    Flo Health's Privacy Policy states that it only provides users' personal data to third parties when that data "is reasonably necessary to perform their work," which may include "suppl[ying] software applications, web hosting, and other technologies for the App." Flo Health breached the contract because it did not disclose this information to "provide services in connection with the App." Flo Health allowed third parties to use this information for any purposes, including for their own benefit like research, development, and targeted advertising that was unrelated to the stated purpose disclosed by the Privacy Policy.

114.    Flo Health's Privacy Policy stated that any information shared with third parties "exclud[ed] information regarding your marked cycles, pregnancy, symptoms, notes and other information that is entered by you and that you do not elect to share." Flo Health breached the contract because it disclosed users' intimate health data regarding marked cycles, fertility cycles, pregnancy and other health information in the form of Custom App Events to third parties.

---

[24] *Terms of Use*, FLO HEALTH, INC., https://flo.health/terms-of-service (effective Feb. 5, 2020).

115.    Flo Health's Privacy Policy stated that Flo Health would not disclose "any data related to health" to either of the mobile analytics firms AppsFlyer or Flurry. Flo Health breached the contract because it disclosed to AppsFlyer and Flurry Custom App Events which contained intimate health data.

116.    Flo Health's Privacy Policy stated that Flo Health would only provide "non-personally identifiable information," "Personal Data like device identifiers," or "device identifiers" to Facebook, Google, and Fabric. Flo Health breached the contract because it provided Facebook, Google, and Fabric access to Custom App Events which conveyed identifiable information and intimate health data, unlike device identifiers.

117.    By disclosing Plaintiff's and Class members' intimate health data to third parties without their consent, Flo Health has breached material terms of the contract.

118.    As a result of Flo Health's breach of contract, Plaintiff and Class members have suffered damages in an amount to be determined at trial. In addition, or in the alternative, Plaintiff and Class members seek damages that will reasonably compensate Plaintiff and Class members for the harm to their privacy interest. By sharing their intimate health data with third parties without consent, Flo Health invaded Plaintiff's and Class members' privacy interests. As a result of Flo Health's breach of the TOU and Privacy Policy, Plaintiff and Class members have suffered damages.

**THIRD CLAIM**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**
**(In the Alternative)**

119.    Plaintiff re-alleges and incorporates by reference the preceding allegations as if fully restated herein.

120.    Plaintiff alleges this claim in the alternative to her Second Claim for Relief.

121.    Plaintiff entered into an implied contract with Defendant by downloading and using the Flo App. In connection with using the Flo App, both parties agree to abide by Flo

Health's Terms of Use ("TOU"). Plaintiff has fully complied with her obligations under the TOU with regard to her use of Flo Health's product and services.

122.    Defendant solicited and invited prospective customers such as Plaintiff and Class members to use the Flo App with claims that they care about Plaintiff and Class members' privacy rights.

123.    Defendant's offer included specific assurances from Flo Health's Privacy Policy, including that Flo Health would only share "certain" personal data with third parties, limited to "information that is necessary to perform their work" in support of the Flo App.

124.    Plaintiff and Class members accepted Defendant's offers by downloading the Flo App and entering intimate health data into the Flo App because of these promises.

125.    In entering into such implied contracts, Plaintiff and Class members reasonably believed that Defendant would comply with relevant laws and regulations, including privacy laws, as well as their own assurances.

126.    Plaintiff and Class members reasonably believed that Defendant would not disclose intimate information regarding their fertility cycles, health symptoms, personal relationships, and sexual activities with third parties, as stated in its Privacy Policy.

127.    Defendant's implied promise not to disclose Plaintiff's and Class members' sensitive personal information to third parties is evidenced by, e.g., the representations in Flo Health's Terms of Use and Privacy Policy set forth above.

128.    Plaintiff and Class members would not have downloaded or made use of the Flo App in the absence of such promises.

129.    Plaintiff and Class members fully performed their obligations under the implied contracts with Defendants by abstaining from making any "forbidden use" of the Flo App, as dictated by the Flo Health terms of service.[25]

---

[25] *Terms of Use*, FLO HEALTH, INC., https://flo.health/terms-of-service (effective Feb. 5, 2020).

130.    Defendant breached its implied contract with Plaintiff and Class members by secretly collecting and disclosing sensitive personal data for Defendant's own benefit, in violation of the Terms of Use and Privacy Policy.

131.    By disclosing Plaintiff's and Class members' intimate health data to third parties without their consent, Flo Health has breached material terms of the implied contract.

132.    As a result of Flo Health's breach of implied contract, Plaintiff and Class members have suffered damages in an amount to be determined at trial. In addition, or in the alternative, Plaintiff and Class members seek damages that will reasonably compensate Plaintiff and Class members for the harm to their privacy interest. By sharing their intimate health data with third parties without consent, Flo Health invaded Plaintiff's and Class members' privacy interests. As a result of Flo Health's breach of the TOU and Privacy Policy, Plaintiff and Class members have suffered damages.

**FOURTH CLAIM**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**
**(In the Alternative)**

133.    Plaintiff re-alleges and incorporates by reference the preceding allegations as if fully restated herein.

134.    Plaintiff alleges this claim in the alternative to her Second Claim for Relief.

135.    Plaintiff and Class members conferred a benefit upon Flo Health in the form of sensitive personal data that Defendant collected from Plaintiff and Class members, without authorization and proper compensation. Defendant has collected, disclosed, and otherwise misused this information for its own gain, providing Defendant with economic, intangible, and other benefits, including substantial monetary compensation from third parties who received Plaintiff's and Class members' sensitive personal data.

136.    Defendant unjustly retained those benefits at the expense of Plaintiff and Class members because Defendant's conduct harmed Plaintiff's and Class members' privacy interests without providing any commensurate compensation.

137.    The benefits that Defendant derived from Plaintiff and Class members rightly belong to Plaintiff and Class members. It would be inequitable under unjust enrichment principles in California and every other state for Defendant to be permitted to retain any of the profits or other benefits it derived from the unfair and unconscionable methods, acts, and trade practices alleged in this Complaint.

138.    Defendant should be compelled to disgorge in a common fund for the benefit of Plaintiff and Class members all unlawful or inequitable proceeds it received, and such other relief as the Court may deem just and proper.

**FIFTH CLAIM**
**Violations of the Stored Communications Act ("SCA")**
**18 U.S.C. § 2701 *et seq.***
**(On Behalf of Plaintiff and the Class)**

139.    Plaintiff re-alleges and incorporates by reference the preceding allegations as if fully restated herein.

140.    The SCA prohibits anyone from (1) intentionally accessing without authorization, or in excess of authorization, a facility through which an electronic communication service is provided and (2) thereby obtaining, altering, or preventing authorized access to a wire or electronic communication (3) while it was in electronic storage in such system. 18 U.S.C. § 2701(a)(1).

141.    The SCA defines "electronic communication" broadly to include "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." 18 U.S.C. 2510(12). The data that Defendant collects from Plaintiff and Class members are electronic communications within the statute.

142.    The Flo App is a facility that provided electronic communication service, within the definition of the statute. An electronic communication service is "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). The Flo App provides electronic communications services to its users including

Plaintiff and Class members including by sending, receiving, posting and making available for transfer messages, data, images, queries, notifications, forms, updates, and others.

143.    Defendant keeps in electronic storage the electronic communications that it accesses from the Flo App. The SCA defines "electronic storage" as "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C. § 2510(17). Defendant maintains the electronic communications that the Flo App collects for temporary, intermediate storage while the user's account is active. Defendant also maintains the electronic communications for backup protection after a user deletes the Flo App or deactivates her account in case she decides to re-activate the services.

144.    Defendant intentionally accessed the Flo App without authorization, or in excess of authorization, from Plaintiff and Class members. Any authorization that Plaintiff and Class members may have provided to Defendant is null, void, invalid and ineffective because: Defendant obtained any such authorization by fraud and deceit; Defendant failed to provided Plaintiff and Class members with actual or constructive notice of the nature and significance of its data and privacy practices; and Defendant's Privacy Policy contains material misrepresentations and omissions. To the extent Defendant obtained valid authorization, it nonetheless accessed these facilities in excess of the authorization it received by obtaining personal data in excess of what is necessary to provide services in connection with the Flo App and selling that data to third parties in violation of its own Privacy Policy.

145.    As a result of Defendant's violations of the SCA, Plaintiff and Class members have suffered harm and injury, including but not limited to the invasion of their privacy rights.

146.    Pursuant to 18 U.S.C. § 2707, Plaintiff and Class members are entitled to: (1) appropriate equitable or declaratory relief; (2) damages, in an amount to be determined at trial, assessed as the sum of the actual damages suffered by Plaintiff and the Class and any profits made by Defendant as a result of the violation, but in no case less than the minimum statutory

damages of $1,000 per person; and (3) reasonable attorneys' fees and other litigation costs reasonably incurred.

## SIXTH CLAIM
### Violations of the Stored Communications Act ("SCA")
### 18 U.S.C. § 2702 *et seq.*
### (On Behalf of Plaintiff and the Class)

147.    Plaintiff re-alleges and incorporates by reference the preceding allegations as if fully restated herein.

148.    The SCA provides that a person "providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service[.]" 18 U.S.C. § 2702(a)(1).

149.    "Electronic communication" is broadly defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce[.]" 18 U.S.C. § 2510(12).

150.    "Electronic storage" is defined as "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and any storage of such communication by an electronic communication service for purposes of backup protection of such communication[.]" 18 U.S.C. § 2510(17)(A)-(B).

151.    "Electronic communication service" is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications[.]" 18 U.S.C. § 2510(15).

152.    "Person" is defined as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation." 18 U.S.C. § 2510(6).

153.    Flo Health, as a corporation, is a person as defined under 18 U.S.C. § 2510(6).

154.    Flo Health provides a service—the Flo App—that allows Plaintiff and Class members to send and receive electronic communications from Flo Health, fellow app users, and

medical experts. Flo Health provides this service "to the public" because it makes the Flo App freely available to millions of individuals, including Plaintiff and Class members.

155.    Defendant keeps in electronic storage the electronic communications that it accesses from the Flo App. Defendant maintains the electronic communications for temporary, intermediate storage while the user's account is active.  Defendant also maintains the electronic communications for backup protection after a user deletes the Flo App or deactivates her account in case she decides to re-activate the services.

156.    Plaintiff and Class members reasonably expected that Defendant's service did not include disclosing their "electronic communications," *i.e.,* their data (as broadly defined), based, in part, on Defendant's failure to provide any disclosures or obtain consent for permission to do so, as well as Defendant's affirmative misrepresentations that it would not disclose this information.

157.    Defendant stores Plaintiff's and Class members' electronic communications on external servers and intentionally divulged them by disclosing this information to third parties, in reckless disregard for Plaintiff's and Class members' privacy rights for Defendant's own financial benefit.

158.    Defendant's actions were at all relevant times intentional, willful, and knowing, as evidenced by the fact that this was Defendant's routine business practice and it purposefully failed to disclose this practice to consumers.

159.    As a result of Defendant's violations of the SCA, Plaintiff and Class members have suffered harm and injury, including but not limited to the invasion of their privacy rights.

160.    Pursuant to 18 U.S.C. § 2707, Plaintiff and Class members are entitled to: (1) appropriate equitable or declaratory relief; (2) damages, in an amount to be determined at trial, assessed as the sum of the actual damages suffered by Plaintiff and the Class and any profits made by Defendant as a result of the violation, but in no case less than the minimum statutory damages of $1,000 per person; and (3) reasonable attorneys' fees and other litigation costs reasonably incurred.

### SEVENTH CLAIM
**Violations of the California Confidentiality of Medical Information Act ("CMIA")**
**Civil Code Section 56.101**
**(On Behalf of Plaintiff and the Class)**

161.    Plaintiff re-alleges and incorporates by reference the preceding allegations as if fully restated herein.

162.    Defendant is deemed a provider of health care under Civil Code Section 56.06, subdivision (b), because it offers software to consumers that is designed to maintain medical information for the purposes of allowing its users to manage their information or for the diagnosis, treatment, or management of a medical condition.

163.    Specifically, the Flo App is designed for users to store, email, and print information relating to their reproductive health, such as ovulation and menstrual cycles, and/or for the diagnoses, treatment, or management of users seeking to become pregnant or treat infertility.

164.    Defendant is therefore subject to the requirements of the CMIA and obligated under subdivision (b) to maintain the same standards of confidentiality required of a provider of health care with respect to medical information it maintains on behalf of users.

165.    Defendant failed to maintain the standards of confidentiality required under Section 56.06(b) because it disclosed to third parties Plaintiff's and Class members' intimate health data without consent, including information concerning physical and emotional health, family planning, personal relationships, and sexual activities.

166.    California Civil Code section 56.101, subdivision (a) requires that every provider of health care "who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall do so in a manner that preserves the confidentiality of the information contained therein."

167.    Defendant breached its statutory duty by failing to maintain, preserve, and store confidential medical information when it negligently released to third parties Plaintiff's and Class members' intimate health data without their consent.

CLASS ACTION COMPLAINT

168.     Pursuant to Civil Code section 56.36, Plaintiff and Class members are entitled to: (1) nominal damages of $1,000; (2) actual damages, if any; and (3) reasonable attorneys' fees and costs.

## EIGHTH CLAIM
### Violations of CMIA, Civil Code Section 56.10
### (On Behalf of Plaintiff and the Class)

169.     Plaintiff re-alleges and incorporates by reference the preceding allegations as if fully restated herein.

170.     Civil Code section 56.10, subdivision (a), prohibits a health care provider from disclosing medical information without first obtaining an authorization, unless a statutory exception applies.

171.     Defendant disclosed medical information without first obtaining authorization when it disclosed to third parties Plaintiff's and Class members' intimate health data without consent. No statutory exception applies. As a result, Defendant violated Civil Code section 56.10, subdivision (a).

172.     Defendant breached its statutory duty by failing to maintain, preserve, and store confidential medical information when it negligently released to third parties Plaintiff's and Class members' intimate health data without their consent.

173.     Pursuant to Civil Code section 56.36, Plaintiff and Class members are entitled to: (1) nominal damages of $1,000; (2) actual damages, if any; and (3) reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself and the proposed class respectfully requests that the Court enter an order:

a.     Certifying the Class and appointing Plaintiff as Class Representative;

b.     Finding that Defendant's conduct was unlawful as alleged herein;

c.     Awarding declaratory relief against Defendant;

d.    Awarding such injunctive and other equitable relief as the Court deems just and proper;

e.    Awarding Plaintiff and Class members statutory, actual, compensatory, and punitive damages, as well as restitution and/or disgorgement of profits;

f.    Awarding Plaintiff and Class members pre-judgment and post-judgment interest

g.    Awarding Plaintiff and Class members reasonable attorneys' fees, costs, and expenses; and

h.    Granting such other relief as the court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues so triable.

Dated: February 16, 2021                    Respectfully submitted,

                                            */s/ Aaron M. Sheanin*

                                            Aaron M. Sheanin (SBN 214472)
                                            Christine S. Yun Sauer (SBN 314307)
                                            **ROBINS KAPLAN LLP**
                                            46 Shattuck Square, Suite 22
                                            Berkeley, CA 94704
                                            Telephone: (650) 784-4040
                                            Facsimile: (650) 784-4041
                                            asheanin@robinskaplan.com
                                            cyunsauer@robinskaplan.com

                                            Diana J. Zinser (*pro hac vice* forthcoming)
                                            John A. Macoretta (*pro hac vice* forthcoming)
                                            Jeffrey L. Kodroff (*pro hac vice* forthcoming)
                                            **SPECTOR ROSEMAN & KODROFF, P.C.**
                                            2001 Market Street, Suite 3420
                                            Philadelphia, PA 19103
                                            (215) 496-0300
                                            dzinser@srkattorneys.com
                                            jmacoretta@srkattorneys.com
                                            jkodroff@srkattorneys.com

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kellie Lerner (*pro hac vice* forthcoming)
Benjamin D. Steinberg (*pro hac vice* forthcoming)
**ROBINS KAPLAN LLP**
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
klerner@robinskaplan.com
bsteinberg@robinskaplan.com

*Attorneys for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT